IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Amy M. Stevenson,                                   Case No. 3:07CV3743

        Plaintiff,

        v.                                                ORDER

Linnie Willis, et al.,

        Defendants.

This is a suit against the executive director and hearing officer of the Lucas Metropolitan Housing Authority [LMHA or the Housing Authority]. Plaintiff formerly received benefits under the Housing Choice Voucher Program under § 8 of the Federal Housing Act of 1937, 42 U.S.C. § 1473f. Plaintiff claims that the defendants have illegally deprived of her right to continued rental subsidies, and terminated her benefits without a fair hearing and due process. She seeks declaratory, injunctive and monetary relief.

Pending is defendants' motion to dismiss. [Doc. 22]. Defendants move to dismiss on several grounds: 1) plaintiff dismissed the LMHA and, having dismissed the agency, plaintiff cannot go against the individual defendants, even in their official capacities; 2) plaintiff has failed to state a claim for a Fourteenth Amendment due process violation; 3) plaintiff has failed to state a claim under 42 U.S.C. § 1983; and 4) the court lacks jurisdiction to hear the suit.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367 and 28 U.S.C. §1983 as the acts complained of are prohibited under the Fourteenth Amendment and the Housing Act.[1] For the reasons discussed below, defendants' motion shall be granted with regard to the defendant Bush and otherwise denied.

## Background

Plaintiff, a single mother, and her four daughters began participating in the § 8 Housing Choice Voucher Program, operated by the Housing Authority, in 2000. In 2002, she rented a home under a lease approved by the Housing Authority, which paid plaintiff's full monthly rent. According to Stevenson, the landlord began making unreasonable and unlawful demands. As a result, she decided to move. To do so, the Housing Authority required written approval from the landlord stating that she owed no rent and did not owe for physical damages to the property.

The landlord claimed plaintiff was responsible for a variety of damages and refused to give her written approval unless plaintiff agreed to be responsible for the repairs. Although she denied that she had caused any damage, in February, 2006, plaintiff signed an agreement to pay for the repairs.

---

[1] Defendants argue plaintiff seeks a review of an administrative decision of a state created agency, and therefore this court does not have jurisdiction. The purpose of § 1983 is to vindicate federal rights and Stevenson puts forth a straightforward § 1983 suit.

Defendants also argue plaintiff did not file an appeal of the LMHA decision in Ohio state court under O.R.C. § 2505.07 before suing on the federal claim. That does not preclude this court from hearing the present case. It is well settled that there is no requirement to exhaust state administrative procedures prior to the filing of a § 1983 claim. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 147 (1988) ("[T]he principal remedy Congress chose to provide injured persons [under § 1983] was immediate access to *federal* courts"); *McNeese v. Board of Ed.*, 373 U.S. 668 (1982); *Patsy v. Board of Regents*, 457 U.S. 496 (1963).

In May, 2006, the landlord served plaintiff with a notice to vacate. In June, Stevenson and her children moved out of the apartment to live with her mother. In July, plaintiff received notice that LMHA was going to terminate her from the voucher program. The notice cited two grounds for termination: 1) "moving in lieu of eviction" and 2) "damages to the unit."

The agency held an informal hearing on August 31, 2006. Defendant Vivian Bush, hearing officer for the Housing Authority, presided at the hearing. Attorneys from Legal Aid of Western Ohio represented the plaintiff.

The Housing Authority presented no witnesses. Bush presented two documents: 1) an internal record summarizing a telephone conversation between plaintiff's landlord and a LMHA case manager, in which the landlord stated Stevenson owed $3,500 in damages; and 2) the repair agreement between the landlord and Stevenson. The landlord was not present at the hearing. No proof of the alleged damages was presented.

Plaintiff and her mother testified at the hearing.

The agency, through Bush, issued its decision in December, 2006. The Housing Authority ruled that Stevenson "must enter into a repayment agreement with [her] former landlord for the damages" and that she must provide a copy of the agreement to the LMHA by January, 30, 2007. According to the complaint, the decision did not contain a statement of the evidence to show what facts Bush relied on in reaching a decision. It did not state the amount of damages owed. It did not state that plaintiff was automatically terminated.

Stevenson did not set up a repayment plan. The Housing Authority did not resume the payments. Plaintiff asked LMHA to reconsider is decision. On reconsideration, the agency confirmed that Stevenson had to set up a repayment agreement in order to retain her voucher. At this

...

point, the January 30, 2007, deadline had passed and the Housing Authority refused to allow Stevenson back into the § 8 voucher program.

On December 7, 2007, plaintiff initially sued the LMHA, as well as its Executive Director, Linnie Willis, and Bush, who are sued in their official capacities. She later filed a second amended complaint [Doc. 19], simply naming both Willis and Bush in their official capacities as LMHA officials. After filing the final amended complaint, Stevenson filed a Notice of Dismissal, under Fed. R. Civ. P. 41(a), dismissing the LMHA without prejudice. [Doc. 20].

Plaintiff alleges that Bush both presented the agency's case and evidence and adjudicated the issues, and that she relied on a phone conversation with the landlord when the landlord was not present to corroborate the conversation or be cross-examined. She claims that the process by which she was terminated did not comport with due process under the Fourteenth Amendment. She also asserts claims under regulations applicable to the Federal Housing Act and tenants of public housing agencies.

Defendants argue that plaintiff has failed to state claims either for a Fourteenth Amendment due process violation or under the regulations on which she bases the remainder of her claims.

## Motion to Dismiss

To survive a motion to dismiss under Civil Rule 12(b)(6), a plaintiff is required to allege in the complaint "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,   U.S.   ,127 S. Ct. 1955, 1974 (2007). *Accord Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008); *United States, ex rel. Bledsoe v. Cmty. Health Systems, Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

In making this determination, I must "construe the complaint in a light most favorable to plaintiffs" and "accept all well-pled factual allegations as true." *Bishop*, *supra*, 520 F.3d at 519. *Accord Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008). I also must "draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It is not my function, at this stage, to weigh evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373,377 (6th Cir. 1995). Furthermore, "[d]ismissals of complaints filed under civil rights statutes are scrutinized with special care." *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987).

## Discussion

### 1. Voluntary Dismissal of the LMHA

Only Willis and Bush, in their official capacities, remain named defendants. Defendants allege that, because Stevenson dismissed the LMHA after filing the second amended complaint, her claims against Willis and Bush must also be dismissed. The proper remedy, they suggest, would be plaintiff's refiling the suit to again name Willis and Bush as the defendants.

The cases cited as authority for defendants' position discuss the propriety of dismissal of claims against governmental entities and official capacity defendants based on substantive defenses. The issue in those cases was whether Ohio's immunity statute, O.R.C. § 2744.02, which provides immunity to a political subdivision for actions involving employees in the course of their governmental functions, applied equally to the state and the employees sued in their official capacity. These cases, however, do not provide guidance in the case at hand.

In her second amended complaint, plaintiff's claims against the governmental entity are recast in her claims against the Housing Authority employees in their official capacities. The fact that Stevenson voluntarily dismissed the LMHA after she filed her second amended complaint

5

should not change the ultimate inquiry: whether the official-capacity defendants are potentially liability to the plaintiff on the claims alleged. Plaintiff, regardless of the subsequent filing of the notice of dismissal, has, as discussed below, and regardless of her dismissal of the agency, a cognizable claim that I will allow to go forward at this time.

Requiring refiling in this case would merely amount to a needless waste of judicial resources and added expense to the parties. Further, neither party raises the issue of the statute of limitations. I assume it is not a procedural obstacle for plaintiffs;[2] however, if plaintiff was barred by the relevant limitations, this too serves as reason to decline outright dismissal of the official capacity claims against the defendants. I find that plaintiff's voluntary dismissal of LMHA does not serve to dismiss all claims contained within the second amended complaint.

### 2. Official Capacity Claims

Plaintiff named Willis and Bush in their official capacities as defendants. Where a plaintiff seeks equitable relief, rather than damages, against an individual governmental defendant, the plaintiff can sue the individual in her official capacity. *See, e.g.*, *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993) (providing that "state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) and *Kentucky v. Graham*, 473 U.S. 159,

---

[2] Section 1983 creates a private right of action for violations of federally protected rights. Because it has no statute of limitations provision, state statutes of limitations apply to determine the timeliness of such claims. *See Wilson v. Garcia*, 471 U.S. 268-69 (1985). Because § 1983 claims are best characterized as personal injury actions, *Wilson*, *supra*, 471 U.S. at 276-80, the relevant statute of limitations for plaintiff's § 1983 claims is Ohio's two year statute of limitations for personal injuries. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

167 n.14 (1985)); *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). Accordingly, Willis, as the agency's Executive Director, remains a proper plaintiff.

However, the same is not so with regards to Bush, even though it is how she conducted the hearing that gives rise to plaintiff's challenge. An official capacity suit is essentially a lawsuit brought against the entity itself. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). As plaintiff has already named Willis, in her official capacity as the Executive Director of LMHA, and plaintiff has pled no individual capacity claims against Bush, it is duplicative to name Bush in the suit.

Plaintiff claims that Bush's role within LMHA has not been clarified, and that through discovery plaintiff will determine if Bush was an employee of LMHA acting under the control of Willis when the events occurred. She is concerned that the "full scope" of her rights will not be protected. This argument fails. Stevenson is equally entitled to discovery against LMHA and her rights remain fully protected, even without Bush as a named defendant.

Defendants' argument that it is redundant to name both Willis and Bush in their official capacities is persuasive. Defendant Vivian Bush shall be dismissed from the suit.

### 3. Due Process Claims

Defendants challenge plaintiff's Fourteenth Amendment due process claims. In plaintiff's first and second claims for relief, she alleges that defendants violated her Fourteenth Amendment right to due process because: 1) plaintiff did not confront and examine witnesses used by the LMHA; 2) Bush acted both as advocate and adjudicator; 3) LMHA did not notify plaintiff on December 18, 2006, that failure to set up a repayment plan would cause her termination from the

§ 8 program; and 4) LMHA failed to issue a notice or offer a hearing prior to the termination of plaintiff's benefits.

Plaintiff's participation in the § 8 Housing Choice Voucher Program, administered by LMHA, is a property interest protected by the requirement of procedural due process. *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180, 184 (6th Cir. 1984). Agency divestiture of a property interest is lawful only if preceded by

> adequate notice of the grounds for termination, a right to examine relevant documents of the public housing authority prior to hearing, the right to counsel, and the right to cross-examine witnesses. In addition, the tenant has a right to a written decision by an impartial hearing panel based solely on evidence presented at the hearing.

*Id.* at 185 (citing 24 C.F.R. § 866.4(1) and §§ 866.53-.57).

Defendants claim that Stevenson had notice, counsel, a hearing and a decision explaining the agency's rulings, and claim plaintiff does not allege Bush was not impartial.

Federal courts across the country have considered the issue of a § 8 participant's due process rights prior to a termination from the program. In a challenge to a hearing officer's decision to terminate housing benefits, the Fourth Circuit held:

> *Goldberg* places five requirements on the termination process employed by a housing authority: (1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker.

*Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1995) (citing *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970)).

Stevenson has alleged facts in her complaint, which if accepted as true, successfully support a valid claim for due process violations. The complaint states: 1) LMHA failed to allow Stevenson

an opportunity to confront and cross-examine witnesses used by defendants to form the basis for the termination; and 2) LMHA allowed the hearing officer to both argue the Housing Authority's case and act as the hearing officer.

Bush considered the report of a phone conversation between the landlord and the LMHA housing manager, in which the landlord reportedly claimed plaintiff owed $3500 in damages. Hearsay is admissible at such hearings, but it is improper for a hearing officer to rely solely on hearsay evidence as "the opportunity to confront and cross-examine witnesses is essential when the information supplied by those witnesses is the reason for the loss of the loss of benefits." *Edgecomb v. Housing Authority of the Town of Vernon*, 824 F. Supp. 312, 316 (D. Conn. 1993) (citing *Goldberg*, *supra*, 397 at 269-70). Where, as here, the resolution of the dispute depends on disputed issues of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *Goldberg*, *supra*, 397 U.S. at 269.

It is not, however, necessary to determine whether, under the facts of this case, in which hearsay statements attributed to a potentially biased source played a dispositive role whether that circumstance alone suffices to state a due process cause of action.

This is so because when Bush acted both as advocate and adjudicator, she amplified the danger to plaintiff's right to procedural due process already posed by her reliance on untested hearsay.

To be sure, an administrative agency usually "will necessarily serve both as prosecutor and as judge" in its hearing. *Cobb v. Yeutter,* 889 F.2d 724, 730 (6th Cir. 1989). This, like the admission of hearsay, does not alone result in a violation of procedural due process. *See Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir. 1986) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (claim of

9

administrative bias "must overcome a presumption of honesty and integrity in those serving as adjudicators").This may be so, but minimum due process requires a hearing before a *neutral* adjudicator. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) (the requirement of neutrality helps to guarantee life, liberty, or property are not taken based on an erroneous notion of the facts or the law).

To have, as in this case, a *single individual* in the agency's employ performing the dual functions of advocate and adjudicator thus raises very serious constitutional concerns. Impermissible bias on the part of a hearing officer can exist where "the decisionmaker was engaged in adjudicative and executive functions in violation of the principle of separation of powers." *Hammond v. Baldwin*, 866 F.2d 172, 177 (6th Cir.1988). *Accord*, *Hostetler v. City of Perrysburg*, 998 F.Supp. 820, 823 (N.D. Ohio, 1998) (dictum) (Carr, J.); *see also Elliott v. SEC*, 36 F.3d 86, 87 (11th Cir. 1994) ("An agency may combine investigative, adversarial, and adjudicative functions, as long as no employees serve in dual roles."); 5 U.S.C.A. § 554(d) (prohibiting an "employee or agent" engaged in investigation or prosecution from participating or advising on the decision in that case or a factually related case).

Defendants argue plaintiff failed to assert Bush was not an impartial decision maker. Such an assertion is not necessary – what matters is the role Bush played at the hearing. Acting as a filter as she did, she had an opportunity as advocate to construct the proof in a way that she could anticipate – even before the hearing started – she, in her capacity as adjudicator for the agency would find to suffice to rule in its behalf.

Plaintiff's complaint states a cause of action under § 1983 for violation of her right to procedural due process.

**4. Remaining Claims**

In her third, fourth and fifth claims for relief, plaintiff alleges violations of 42 U.S.C. §§ 1437d and 1437f[3] and 24 C.F.R. § 982.555, *et seq.*[4] Defendants claim that the regulations on which plaintiff bases the remainder of her claims do not provide a private cause of action. Plaintiff indicates, and I agree, that the more recent trend is to find a private cause of action.

Plaintiff's claims arise under §1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Private individuals may bring

---

[3] 42 U.S.C. § 1437d prohibits negligent or knowing disclosure of information by an employee of public housing agency or any other negligent or knowing action that is inconsistent with the subsection. 42 U.S.C. § 1437f addresses low-income housing assistance; subsection (o) addresses the voucher program.

[4] Plaintiff claims defendants violated the following subsections of 24 C.F.R. § 982.555:

> § 982.555(c)(2) In [specified cases], the P[ublic] H[ousing] A[gency] must give the family prompt written notice that the family may request a hearing. The notice must: (i) Contain a brief statement of reasons for the decision, (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (iii) State the deadline for the family to request an informal hearing.
>
> § 982.555(e)(5) Evidence. The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.
>
> § 982.555(e)(6) Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

lawsuits to enforce not only constitutional rights but also rights created by federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court established a three-part test to determine whether a statute creates a federal right: 1) Congress must have intended that the provision in question benefit the plaintiff; 2) plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and 3) the statute must unambiguously impose a binding obligation on the states. *See Blessing*, *supra*, 520 U.S. at 340-41. More recently, the Court clarified *Blessing* by stating the key inquiry is whether Congress unambiguously created a private cause of action in the statute. *Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . .").

In the pre-*Gonzaga* case *Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418 (1987), the Supreme Court addressed use of § 1983 in conjunction with the United States Housing Act. There, families in the Housing Choice Voucher Program challenged a public housing authority's utility charges as a violation of the Brooke Amendment. *Id.* at 419-20. The *Wright* Court found a private right of action in the Housing Act, holding "nothing in the Housing Act or the Brooke Amendment evidences that Congress intended to preclude petitioners' § 1983 claim" and "the benefits Congress intended to confer on tenants are sufficiently specific and definite to qualify as enforceable rights." *Id.* at 429, 432; *see also Johnson v. Housing Authority Of Jefferson Parish*, 442 F.3d 356, 360-67 (5th Cir. 2006) (concluding 42 U.S.C. § 1437f(o)(2) creates a private right of action, enforceable though § 1983, to challenge a housing authority's utility allowance

12

calculation). The Court's analysis in *Wright* is wholly consistent with that employed in more recent cases, and leads to the conclusion that Stevenson has a private right of action to enforce her remaining claims. I recognize the Supreme Court's approach to § 1983 enforcement of federal statutes has generally been restrictive. But application of the *Blessing* and *Gonzaga* analysis demonstrates Congress intended the allegedly violated provisions of § 982.555 to benefit plaintiff. Section 982.555 describes when a hearing is required and the procedures for such hearings. Its statutory text, found in 42 U.S.C. § 1437d(k), provides:

> The Secretary shall by regulation require each public housing agency receiving assistance under this Act to establish and implement an administrative grievance procedure under which tenants will--
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l);
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.

Congress intended § 1437d(k) to benefit Housing Choice Voucher Program participants like Stevenson. It imposes an unambiguous duty on public housing authorities to develop procedures that provide voucher holders with the right to an administrative hearing before deprivation of the voucher benefit. Section 1437d(k) and 24 C.F.R. § 982.555 impose a binding obligation on public housing authorities to establish and implement an administrative grievance procedure with specific requirements.

Per the reasoning of *Wright*, § 1437d(k), is not so vague and amorphous that its enforcement would strain judicial competence. Although § 1437d(k) does not create a centralized administrative enforcement scheme, Housing and Urban Development regulations clarify the rights. The participant "must be given the opportunity to present evidence, and may question any witness," 24 C.F.R. § 982.555(e)(5), and the "person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determination relating to the individual circumstances of the family shall be based on a preponderance of the evidence at the hearing." 24 C.F.R. § 982.555(e)(6). The provisions relied on by Stevenson are not ambiguous.

Several recent cases have squarely addressed the issue and found the provisions of the Housing Act in question create enforceable rights under § 1983. In *Gammons v. Massachusetts Department of Housing and Community Development*, 523 F. Supp. 2d 76, 85 (D. Mass. 2007), a district court held that § 1437d(k) "mandates the creation of procedural rights for tenants faced with adverse action," and "[t]he language of the statute unambiguously confers rights for the benefit of Section 8 subsidy recipients." That court "recognize[d] a cause of action under §1983 to challenge the sufficiency of the evidence supporting defendants' decision to terminate the plaintiffs' Section 8 subsidy." *Id.*

Similarly, another district court ruled that a Housing Choice Voucher participant could challenge her termination from the program under § 1983 on the grounds that she was not afforded an impartial hearing. *Fields v. Omaha Housing Authority*, 2006 WL 176629, at *3 (D. Neb.). In *Basco v. Machin*, 514 F.3d 1177, 1180 (11th Cir. 2008), the court held in favor of participants "alleging deprivations of their right to procedural due process under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983." As plaintiff points out, even a case cited by defendants finds "Section

14

1983 is the proper means by which a public housing tenant may challenge the action of a state public housing agency that violates the United States Housing Act." *Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004).

The housing choice voucher program, and the benefits extended thereby, support the conclusion that § 1437d(k) creates enforceable rights for its participants. The analysis in *Wright*, as confirmed through *Gonzaga* and, more recently, *Johnson* and the recent line of cases, makes clear that individuals can seek redress when a public housing agency fails to comply with termination procedures.

Just as tenants can challenge a rent calculation, they should also be able to challenge procedures for termination of the subsidy altogether. Stevenson's right not to be arbitrarily terminated from participation in the Housing Choice Voucher Program is hardly less important than her right to contest rent and utility charges.

I conclude, accordingly, that Stevenson has state a cause of action under the cited regulations.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT defendants' motion to dismiss [Doc. 22] be, and the same is hereby granted as to the defendant Bush and otherwise overruled.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge